UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| KAREN F. SUELL,<br><br>   Plaintiff,<br><br>v.<br><br>THE LITIGATION PRACTICE GROUP, PC,<br><br>   Defendants. | CIVIL COMPLAINT<br><br>CASE NO. 6:23-cv-00087<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Now comes KAREN F. SUELL ("Plaintiff"), by and through the undersigned, complaining as to the conduct of THE LITIGATION PRACTICE GROUP, PC ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.*, the Texas Credit Services Organizations Act ("TCSOA") under Tex. Fin. Code § 393.101 *et seq.*, and the Texas Consumer Debt Management Services Act ("TCDSMA") under Tex. Fin. Code § 394.201 *et seq.*, in connection with Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA.  Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business within the Eastern District of Texas and a substantial portion of the events or omissions giving rise to the instant claims occurred within the Eastern District of Texas.

## PARTIES

4. Plaintiff is a "person," as defined by 47 U.S.C. § 153(39), and consumer over 18 years of age, residing in Tyler, Texas, which lies within the Eastern District of Texas.

5. Defendant is a credit repair organization, debt settlement provider, and purported law corporation that offers its customers the ability to eliminate and resolve their debt issues through Defendant's myriad services. Defendant is a professional corporation organized under the laws of the state of California with its principal place of business located at 17542 17th Street, Suite 100, Tustin, California.

6. Defendant is a "person" as defined by 47 U.S.C. §153(39).

7. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

8. In approximately May of 2022, Plaintiff had numerous obligations which she wanted to address and which were on the verge of negatively impacting her credit, and began seeking out the assistance of various debt relief and credit repair companies.

9. Plaintiff subsequently happened upon Defendant and its services.

10. Defendant advised that its services included disputing inaccurate information that was appearing on Plaintiff's credit reports and impacting her credit, and would similarly assist Plaintiff

in reaching negotiated settlements with her various creditors in order to resolve the obligations for less than the balance being sought by such creditors.

11. Defendant represented its services as being for the explicit and implicit purpose of improving her credit score, history, and/or rating, as Defendant represented that the disputed information on her credit report would result in the improvement of Plaintiff's credit since certain negative information would be removed, and by that engaging in negotiations to reduce the balance on certain enrolled debts, Plaintiff would be able to address debts that would otherwise be unresolved and unaffordable, in turn decreasing Plaintiff's overall debt load, which would further improve her credit history.

12. Upon information and belief, Defendant routinely represents to prospective customers and/or enrolled clients that its services will restore their credit.

13. Defendant further represented that its services would include setting up a bank account, into which Plaintiff's monthly payments would go and from which Defendant would take funds to perform its services and pay Plaintiff's creditors when settlements were reached.

14. Plaintiff found Defendant's services desirable as she believed Defendant would be able to get certain information removed from her credit report and would actively resolve her obligations, and so Plaintiff agreed to utilize Defendant's services and entered into a contract for the provision of the same.

15. After signing up with Defendant, Defendant advised that Plaintiff needed to stop paying her creditors and instead divert those funds to Defendant for her monthly payments.

16. Plaintiff subsequently began making her monthly payments of approximately $253.06 per month to Defendant, and maintained these payments for approximately 6 months.

17. However, despite Plaintiff maintaining these payments for months, and there being more than sufficient funds with which Defendant could begin negotiating Plaintiff's enrolled debts, Defendant failed to deliver the results or provide the services in the manner such services were represented to Plaintiff.

18. Rather than actually provide the services Defendant represented it would provide, Defendant instead applied Plaintiff's payments towards various upfront flat-fees that were unrelated to any work performed by Defendant.

19. Defendant explicitly misrepresented the nature of the services it would provide to Plaintiff, as it suggested that Plaintiff's monthly payments would go towards resolving enrolled obligations.

20. However, Defendant's contract with Plaintiff contradicted these representations, as Defendant disclaims the oral representations made to induce consumer assent to its terms by including a clause that any settlements reached had to be paid separately from the monthly payments being made by Plaintiff which were going entirely to Respondent's services before those services were performed for Plaintiff.

21. Defendant thus charged Plaintiff for its services before engaging in any performance of its duties under the agreement, let alone completely performing the services justifying its retention of the charged fees.

22. After months of making payments and seeing no results and realizing the deceptive nature of Defendant's conduct, Plaintiff cancelled her agreement with Defendant.

23. Due to Defendant's complete failure to perform any of the services it represented it would perform for Plaintiff, Plaintiff requested a refund of her payments made to Defendant.

24. Defendant advised that it would look into whether a refund could be provided, but subsequently failed to contact Plaintiff or otherwise return the money it accepted in connection with services it never actually performed.

25. Frustrated, distressed, and confused over Defendant's conduct, Plaintiff spoke with the undersigned regarding her rights.

26. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary harm stemming from payments made for deficient credit repair and debt settlement services, out of pocket damages including paying Defendant for services it did not perform, out of pocket damages stemming from Defendant's failure to refund Plaintiff's payments, out of pocket damages stemming from Defendant's charging up front fees instead of using such funds as represented, as well as numerous violations of her state and federally protected interests – interests which were harmed put at a material risk of harm stemming from Defendant's conduct.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

27. Plaintiff repeats and realleges paragraphs 1 through 26 as though fully set forth herein.

28. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

29. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

30. Defendant's represented services in disputing and seeking to remove information from Plaintiff's credit report renders it a credit repair organization under the CROA, as does its conduct in purporting to resolve obligations on behalf of consumers for less than the full balance owed.

    a.   **Violations of CROA §§ 1679b(a)(3)-(4)**

31. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

32. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it could provide Plaintiff. Defendant represented to Plaintiff that her payments would go towards resolving enrolled obligations; however, she later found out the nature of Defendant's deceptive representations as her monthly payments were going entirely towards Defendant's fees and that Plaintiff would need to make payments beyond her monthly payments to settle any debts. Defendant engaged in these deceptive representations and omission regarding the nature of its services and the charged fees so as to deprive Plaintiff of information that, had it been clarified, would have resulted in Plaintiff refusing to use Defendant's services. Upon information and belief, Defendant engages in this behavior on a persistent and frequent basis in order to dupe vulnerable and desperate consumers into making payments under false and deceptive pretenses.

33. Defendant further violated the above provisions of the CROA through its fraudulent, deceptive, and misleading conduct in contradicting the oral representations it makes to consumers

through contractual language. Defendant represents its services one way when inducing consumer assent, yet subsequently contradicts those representations through contractual language.

34. Additionally, Defendant violated the above provisions of the CROA through its fraudulent and deceptive representations that Plaintiff's best course of action was to stop paying her creditors and instead divert those funds to Defendant. Defendant's representations may have been palatable had Defendant's services included using those monthly payments to resolve the debts Plaintiff enrolled in the program; however, given Defendant's conduct in retaining Plaintiff's monthly payments entirely for its own fees and unconnected to any services that it represented would be performed, Defendant's advice, coming from a purported law firm, had an extreme detrimental impact on Plaintiff's financial situation. Defendant engages in this conduct so as to ensure that its customers have sufficient funds to pay for Defendant's useless services, regardless of whether the advice provided was accurate or beneficial to Plaintiff and consumers.

35. Defendant further violated the above provisions of the CROA through its deceptive and misleading failure to refund Plaintiff for services it ultimately failed to perform. Defendant's contract outlines a refund policy, and under this policy Defendant should have refunded Plaintiff's monthly payments for services it failed to perform. However, Defendant failed to refund Plaintiff and deceptively refused to respond to Plaintiff's request for a refund.

    b. **Violations of CROA § 1679b(b)**

36. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

37. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services were fully performed. Defendant improperly charged and retained Plaintiff's payment despite not performing, let alone completely performing, the services justifying the retention of such fees and charges.

    c. **Violation of CROA § 1679c**

38. The CROA provides that a credit repair organization must provide consumers with certain written disclosures in the contract underpinning the provision of credit repair services to consumers. Pursuant to 15 U.S.C. § 1679c(b), "the written statement required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer."

39. Defendant violated 15 U.S.C. §§ 1679c(a)-(b) through its failure to provide the written disclosures required under § 1679c. Defendant never provided such disclosures, nor did it provide a separate document containing such disclosures.

    d. **Violation of CROA §§ 1679d(4) & 1679e**

40. The CROA, pursuant to 15 U.S.C. § 1679d(4), requires credit repair organizations to include, in the contract between them and a consumer, "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'" 15 U.S.C. § 1679e further outlines the extent of a consumer's cancellation rights under CROA while requiring such disclosure to be given to consumers in writing.

41. Defendant violated 15 U.S.C. §§ 1679d(4) & 1679e through its complete failure to provide the above disclosure in immediate proximity to the space reserved for Plaintiff's signature on the contract, as well as its failure to provide the notice of cancellation to Plaintiff.

    e. **Violation of CROA § 1679f(b)**

42. The CROA, pursuant to 15 U.S.C. § 1679f(b) provides that, "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

43. Defendant violated 15 U.S.C. § 1679f(b) through its attempt to obtain Plaintiff's waiver of the protections afforded her under the CROA. Defendant's contract contain numerous efforts to obtain a waiver of Plaintiff's vital consumer protection rights protected by the CROA, including but not limited to the protection regarding the time of when Defendant's fees are "earned" and when Defendant may properly collect such fees.

44. The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(c).

WHEREFORE, Plaintiff, KAREN F. SUELL, respectfully requests that the Honorable Court enter judgment in her favor as follows:

    a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

    b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

    c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

    d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

 e. Awarding any other relief as the Arbitrator deems just and appropriate.

<b><u>COUNT II – VIOLATIONS OF THE TEXAS CREDIT SERVICES ORGANIZATION ACT</u></b>

45. Plaintiff restates and realleges paragraphs 1 through 44 as though fully set forth herein.

46. Plaintiff is a "consumer" as defined by Tex. Fin. Code § 393.001(1).

47. Defendant is a "credit services organization" as defined by Tex. Fin. Code § 393.001(3).

 **a. Violations of Tex. Fin. Code §§ 393.20 & 393.202**

48. The TCSOA, pursuant to Tex. Fin. Code § 393.201, outlines certain requirements of the contracts entered into between consumers and credit services organizations. § 393.202 discusses the nature of a consumer's right to cancel contracts and how such right must be disclosed to consumers.

49. Defendant violated §§ 393.201(b)(1)-(4) & 393.202 through their failure to provide the information required under Texas law in the contract with Plaintiff. Defendant's contract plainly fails to contain the requisite information.

 **b. Violations of Tex. Fin. Code § 393.302**

50. The TCSOA, pursuant to Tex. Fin. Code § 393.302, prohibits credit service organizations from receiving money for their services before such services are fully performed.

51. Defendant violated § 393.302 in much the same way it violated § 1679b(b) of the CROA.

 **c. Violations of Tex. Fin. Code §§ 393.304(1) & 393.305**

52. The TCSOA, pursuant to Tex. Fin. Code § 393.304(1), prohibits a credit services organization from "mak[ing] or us[ing] a false or misleading representation in the offer or sale of the services of the organization." Similarly, pursuant to Tex. Fin. Code § 393.305, "[a] credit services organization or a representative of the organization may not directly or indirectly engage

in a fraudulent or deceptive act, practice, or course of business relating to the offer or sale of the services of the organization."

53. Defendant violated §§ 393.304(1) & 393.305 in much the same way it violated §§ 1679b(a)(3)-(4) of the CROA.

WHEREFORE, Plaintiff, KAREN F. SUELL, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Tex. Fin. Code § 393.503(a)(1);

c. Awarding Plaintiff punitive damages pursuant to Tex. Fin. Code § 393.503(b);

d. Enjoin Defendant from further violations of law pursuant to Tex. Fin. Code § 393.502,

e. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Tex. Fin. Code §§ 393.503(a)(2)-(3); and,

f. Awarding any other relief the Honorable Court deems just and appropriate.

**COUNT III – VIOLATIONS OF THE TEXAS CONSUMER DEBT MANAGEMENT SERVICES ACT**

54. Plaintiff restates and realleges paragraphs 1 through 53 as though fully set forth herein.

55. Plaintiff is a "consumer" as defined by Tex. Fin. Code § 394.202(4).

56. Defendant is a "provider" of "debt management service" as defined by Tex. Fin. Code §§ 394.202(6) & (10).

   a. **Violations of Tex. Fin. Code § 394.207**

57. The TCDMSA, pursuant to Tex. Fin. Code § 394.207, provides that "[a] provider may not engage in false or deceptive advertising,"

58. Defendant violated § 394.207 in much the same way its deceptive representations regarding the nature of, and fees surrounding, its services violated § 1679b(a)(3)-(4) of the CROA.

### b. Violations of Tex. Fin. Code § 394.209

59. The TCDMSA, pursuant to Tex. Fin. Code § 394.209, outlines the various requirements of the contracts entered into between debt management providers and consumers.

60. Defendant violated § 394.209(b) through its failure to include the required statements, disclosures, and information in its contract with Plaintiff.

### c. Violations of Tex. Fin. Code § 394.210

61. The TCDMSA, pursuant to Tex. Fin. Code § 394.210(c), provides that "[a] provider may not impose fees or other charges upon a consumer or receive payment for debt management services until the consumer has entered into a debt management service agreement with the provider that complies with Section 394.209."

62. Defendant violated § 394.210(c) through its charging of Plaintiff for its debt management services without entering into a contract which complies with Texas law.

### d. Violations of Tex. Fin. Code § 394.212

63. The TCDMSA, pursuant to Tex. Fin. Code § 394.212, outlines a number of prohibited practices on the part of providers.

64. Pursuant to § 394.212(a)(9), a provider may not "engage in an unfair, deceptive, or unconscionable act or practice in connection with a service provided to a consumer."

65. Defendant violated § 394.212(a)(9) in much the same way it violated §§ 1679b(a)(3)-(4) of the CROA.

### e. Violations of Tex. Fin. Code § 394.213

66. Pursuant to § 394.213, "a provider has a duty to a consumer who receives debt management services from the provider to ensure that client money held by the provider is managed properly at all times."

67. Defendant violated § 394.213 through its failure to ensure that Plaintiff's money was managed properly. As discussed above, Defendant failed to meaningfully perform the services it represented, and similarly allowed Plaintiff's funds to be mismanaged and applied to unnecessary legal fees which were never actually performed.

WHEREFORE, Plaintiff, KAREN F. SUELL, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Tex. Fin. Code § 394.215(c);

c. Awarding Plaintiff punitive damages pursuant to Tex. Fin. Code § 394.215(c);

d. Enjoin Defendant from further violations of law pursuant to Tex. Fin. Code § 394.215(d);

e. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Tex. Fin. Code § 394.215(c); and,

f. Awarding any other relief the Honorable Court deems just and appropriate.

Dated: February 15, 2023                              Respectfully submitted,

s/ Nathan C. Volheim (Lead Attorney)                  s/Eric D. Coleman
Nathan C. Volheim, Esq. #6302103                      Eric D. Coleman, Esq. #6326734
Counsel for Plaintiff                                 Counsel for Plaintiff
Admitted in the Eastern District of Texas             Admitted in the Eastern District of Texas
Sulaiman Law Group, Ltd.                              Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200                   2500 South Highland Ave., Suite 200
Lombard, Illinois 60148                               Lombard, Illinois 60148
(630) 568-3056 (phone)                                (331) 307-7648 (phone)
(630) 575-8188 (fax)                                  (630) 575-8188 (fax)
nvolheim@sulaimanlaw.com                              ecoleman@sulaimanlaw.com